# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 2265 | **DATE** | 9/25/2002 |
| **CASE TITLE** | Mark Harlan vs. Al Piemonte Nissan, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   Ruling held. **ENTER MEMORANDUM OPINION:** We grant Defendant's motion (Doc 5-1) to dismiss Counts I and II.

(11) ■ [For further detail see order attached to the original minute order.]

No notices required, advised in open court.
No notices required.
Notices mailed by judge's staff.
Notified counsel by telephone.
✓ Docketing to mail notices.
✓ Mail AO 450 form.
Copy to judge/magistrate judge.

SCT   courtroom deputy's initials

SEP 26 2002

date docketed

13

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MARK HARLAN, )
)
        Plaintiff, )
)
vs. ) 02 C 2265
)
AL PIEMONTE NISSAN, INC., )
)
        Defendant. )

DOCKETED
SEP 2 6 2002

## MEMORANDUM OPINION

CHARLES P. KOCORAS, Chief District Judge:

The following matter is before the court on Defendant Al Piemonte Nissan's ("Al Piemonte") motion to dismiss. For the reasons set forth below, the motion to dismiss Counts I and II is granted.

## BACKGROUND

According to the complaint, the allegations of which we must assume as true for present purposes, on May 13, 2000, Plaintiff Mark Harlan ("Harlan") purchased and financed a used 1986 Chevy Nova from Al Piemonte for the total price of $8999.00. According to Harlan, he asked the dealership sales manager, Andrew Bellavia ("Bellavia"), for a warranty before he signed the contract. Bellavia allegedly provided a Quality Guard Plus service contract, which was then signed by both Bellavia and

13

Harlan. The charge for this service contract was then allegedly added to the total purchase price of the vehicle. Harlan further alleges that on June 22, 2000, Al Piemonte representatives again misrepresented to Harlan that his vehicle was covered by the service contract. In early March, 2001, Harlan dropped the vehicle at the Al Piemonte dealership for repair. While the vehicle was in the repair shop, Al Piemonte provided Harlan with a car rental at its own expense. On March 30, 2001, after the car had been at the dealership for over three weeks, Al Piemonte sale manager Gary Dunn ("Dunn") informed Harlan that he did not have a service contract and would have to pay for the cost of the repairs in full. Dunn also informed Harlan that Al Piemonte had never processed his service contract and, in any event, would have been unwilling to provide him with a service contract for only $145.00.

Harlan alleges that Al Piemonte fraudulently induced him to purchase the vehicle by leading him to believe that it was covered by a Quality Guard Plus service contract, without which he would not have purchased the vehicle. Harlan thus incurred out-of-pocket expenses to pay for repairs which would have been covered under the service contract. In addition, had Al Piemonte informed him that he was not covered by a service contract at the time that he dropped off the vehicle for repair, he would have instead taken the vehicle to a lower cost repair shop. Harlan alleges that since Al Piemonte did not provide the service contract, the fee should have been disclosed to

him as a finance charge under the Truth in Lending Act, 15 U.S.C. §1639 ("TILA"). The Plaintiff further alleges that the Defendant actively concealed the TILA violations by misrepresenting that the Plaintiff had a service contract.

Harlan filed a complaint on March 28, 2002 consisting of two counts. Count I alleges a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2, and Count II alleges a violation of the Truth in Lending Act. The Defendant now moves to dismiss the complaint, as the Plaintiff's sole Federal claim was not commenced within the time permitted for bringing such actions. 15 U.S.C. § 1640(e). In addition, the Defendant urges the Court not exercise supplemental jurisdiction over the remaining State law claims. 28 U.S.C. § 1367.

## LEGAL STANDARD

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the sufficiency of the complaint, not to decide the merits of the case. *Triad Assoc., Inc. v. Chicago Housing Auth.*, 892 F.2d 583, 586 (7th Cir. 1989). In ruling on a motion to dismiss, the court must first construe the complaint's allegations in the light most favorable to the plaintiff and all well-pleaded facts and allegations in the plaintiff's complaint must be taken as true. *Bontkowski v. First Nat'l Bank of Cicero*, 998 F.2d 459, 461 (7th Cir. 1993). The allegations of a complaint should not be dismissed for failure to state a claim "unless it appears beyond a doubt that the plaintiff can prove no

set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957); see also *Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 125 L. Ed. 2d 612, 113 S. Ct. 2891 (1993); *Sherwin Manor Nursing Ctr., Inc. v. McAuliffe*, 37 F.3d 1216, 1219 (7th Cir. 1994). Nonetheless, in order to withstand a motion to dismiss, a complaint must allege facts sufficiently setting forth the essential elements of the cause of action. *Lucien v. Preiner*, 967 F.2d 1166, 1168 (7th Cir. 1992).

In reviewing a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court is limited to the allegations contained in the pleadings themselves. Documents incorporated by reference into the pleadings and documents attached to the pleadings as exhibits are considered part of the pleadings for all purposes. Fed. R. Civ. P. 10(c). In addition, "[d]ocuments that a defendant attaches to a motion to dismiss are considered a part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). We may also consider documents and facts included in a plaintiff's response brief so long as they are consistent with the allegations in the complaint. *Hentosh v. Herman M. Finch Univ.*, 167 F.2d 1170 n.3 (7th Cir. 1999). With these principles in mind, the court turns to the instant motion.

## DISCUSSION

The Defendant's basis for its motion to dismiss is that Harlan's TILA claims are barred by the one year statute of limitations period. 15 U.S.C. 1640(e). Disclosure claims under the TILA typically accrue on the date upon which the credit instrument is closed. *See Cardiello v. The Money Store*, 2001 WL 1020311, *1 (S.D.N.Y. 2001) (stating that TILA accrues "at the time the loan is made, not when events thrust evidence of the violation in front of plaintiffs' eyes"); *Evans v. Rudy-Luther Toyota, Inc.*, 39 F. Supp. 2d 1177, 1184 (D. Minn. 1999); *Van Pier v. Long Island Sav. Bank*, 20 F. Supp. 2d 535, 539 (S.D.N.Y. 1998); *Campell v. Chandler Associates, Inc.*, 1997 WL 151889, *2 (N.D.N.Y. 1997); *Thomas v. Ocwen Federal Bank FSB*, 2002 WL 99737 *2 (N.D. Ill. 2002). Although Harlan financed the purchase of the vehicle on May 13, 2000, this action was not filed until more than one year later on March 28, 2002. As the action was filed after the statute of limitations had run, the Defendant asks that the court dismiss Harlan's claims.

Although Harlan admits that he filed his claim outside the one year statute of limitations period, he argues that the statute of limitations should be equitably tolled under TILA, as he was prevented from learning of the TILA violation by Al Piemonte's actions. This court recognized in *Thomas v. Ocwen Federal Bank*, 2002 WL 99737 *3 (N.D. Ill. 2002), that TILA is subject to equitable tolling. *See also*

*Lawyers Title Ins. Corp. v. Dearborn Title Corp.*, 118 F.3d 1157 (7th Cir. 1997); *Evans*, 39 F. Supp. 2d at 1177; *Ramadan v. The Chase Manhattan Corp.*, 156 F.3d 499 (3rd Cir. 1998); *Ellis v. Gen'l Motors Acceptance Corp.*, 160 F.3d 703 (11th Cir. 1998). However, a plaintiff seeking equitable tolling has the burden of demonstrating that his allegations justify the tolling. *See e.g., Kerby v. Mortgage Funding Corp.*, 992 F. Supp. 787, 798 (D. Md. 1998); *Diehl v. ACRI Co.*, 910 F. Supp. 439, 444 (C.D. Ill. 1995). Nor should the decision to toll a statutes of limitation be taken lightly. For the statute of limitations to be tolled, "[e]xtraordinary circumstances beyond the litigant's control must have prevented timely filing." *Greer v. Bank One*, 2002 WL 1732366 *2 (N.D. Ill. 2002) (quoting *U.S. v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000)).

There are two doctrines that can be invoked by plaintiffs to toll the running of the period of limitations: 1) equitable tolling, and 2) fraudulent concealment, also known as equitable estoppel. *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450-51 (1991); *Thomas*, 2002 WL 99737 at *3. The doctrine of equitable tolling allows a plaintiff to toll the statute of limitations if "despite all due diligence he is unable to obtain vital information bearing on the existence of his claim." *Cada*, 920 F.2d at 450; *Thomas*, 2002 WL 99737 at *3; *Johnson Controls, Inc.*, 2001 WL 109534 at *4. The Seventh Circuit describes the doctrine in *Cada* stating that under the doctrine a "plaintiff is assumed to know that he has been injured, so that the statute of limitations

has begun to run; but he cannot obtain information necessary to decide whether the injury is due to wrongdoing." Thus the court limits the doctrine to where the plaintiff knows that he was injured during the limitations period, but does not know he had a claim against the defendant. Although other Seventh Circuit cases do not specifically include that the plaintiff must know of the injury within the limitations period, neither do the other opinions contradict such a distinction. *See Mitchell v. Donchin*, 286 F.3d 447, 451 (7th Cir. 2002) (stating that the doctrine "turns on whether a reasonable person would be aware of the possibility of a claim") (quoting *Hentosh*, 167 F.3d at 1175); *Teamsters & Employers Welfare Trust of Illinois v. Gorman Bros. Realty Mix*, 283 F.3d 877, 884 (7th Cir. 2002) (stating that doctrine applies where plaintiff cannot "obtain information that he needs in order to be able to sue within the statutory period."); *Sharp v. United Airlines, Inc.*, 236 F.3d 368, 373 (7th Cir. 2001) (stating that doctrine applies when plaintiff "is unable to obtain enough information to conclude that he may have a discrimination claim."); *Shropshear v. Corp. Counsel of the City of Chicago*, 275 F.3d 593, 595 (7th Cir. 2001) (stating that the doctrine applies "if it would have been unreasonable to expect [the plaintiff] to be able to sue earlier."); *Hentosh*, 167 F.3d at 1174 (stating that doctrine "often focuses on the plaintiff's excusable ignorance of the limitations period and on the lack of prejudice to defendant") (quoting *Wheeldon v. Monon Corp.*, 946 F.2d 533, 537 (7th Cir. 1991);

*Chapple v. National Starch and Chemical Co and Oil*, 178 F.3d 501, 506 (7th Cir. 1999) (stating that equitable tolling doctrine applies when the plaintiff was not aware within the limitations period "of the possibility that [his] rights [had been] violated").

Harlan argues that because of the alleged deception that he had no reason to question the apparent service contract until he needed to get his car repaired. Harlan states that he "could not have discovered the violation by the exercise of reasonable diligence." In making that assertion he misconstrues the doctrine of equitable tolling for as indicated above the doctrine applies where a plaintiff knows that he has been injured but does not discover that he has a claim against the defendant until after the statute of limitations period. In this case Harlan does not allege that he knew of any injury until he brought his car into get it fixed which was well after the statute of limitations period. Therefore, we find that the doctrine of equitable tolling is not applicable to this case.

To successfully invoke the doctrine of fraudulent concealment and toll a statute of limitations a plaintiff must establish that the defendant took "active steps to prevent the plaintiff from suing in time . . . ." *Cada*, 920 F.2d at 450-51. The "active steps" must be "above and beyond the wrongdoing upon which the plaintiff's claim is founded . . . ." *Mitchell v. Donchin*, 286 F.3d 447, 450 (7th Cir. 2002); *see also Jackson v. Rockford Housing Authority*, 213 F.3d 389, 394 (7th Cir. 2000) (stating that

equitable estoppel only applies when "defendant, in addition to committing the alleged wrong giving rise to the suit, has also tried to prevent the plaintiff from suing in time."); *Johnson Controls, Inc. v. Exide Corp.*, 2001 WL 109534 *5 (N.D. Ill. 2001) (stating that fraudulent concealment must be "distinct from the underlying wrong acts.") Two common examples of such fraudulent concealment would be concealing evidence or promising not to invoke a statute of limitations defense. *Id.* To the extent that concealment is part of the original fraud, the concealing acts merely "postpone the date of accrual by preventing the plaintiff from discovering that he is a victim of fraud." *Cada*, 920 F.2d at 450-51.

In this case the original alleged fraud includes when Bellavia tried to prevent Harlan from discovering that he did not have a service contract and a failure to disclose a fee in accordance with TILA. Harlan argues that Bellavia did more than simply tell Harlan that he had a service contract. In addition Bellavia allegedly also went through the charade of having Harlan sign an apparent contract. Harlan also alleges that on June 22, 2000 he was again told that he had a service contract. We find that having Harlan sign the contract was part of the original fraud alleged in this case. The signing occurred at the same time and place that Bellavia discussed the service contact with Harlan. It is not logical to separate the oral discussions and the signature of the supposed contract. The essence of the fraud claim is that Al Piemonte tricked Harlan

into thinking that he had a service contract. It necessarily follows that virtually the only way that Harlan could believe that he had such a contract was if he signed some paper that he thought was the service contract. Thus signing the fake contract was part of the original fraud and did not constitute concealment as defined by the doctrine of fraudulent concealment. Neither are we convinced that the June 22 representations by Defendants or any of the other allegations are sufficient to show the active steps of concealment necessary for fraudulent concealment.

We note that Harlan's argument essentially goes to when the TILA cause of action accrued. However, TILA actions do not accrue when a plaintiff discovers his injury or could have discovered his injury with reasonable diligence. As stated above TILA violations accrue on the date upon which the loan instrument is signed. *See Cardiello v. The Money Store*, 2001 WL 1020311, *1 (S.D.N.Y. 2001) (stating that TILA accrues "at the time the loan is made, not when events thrust evidence of the violation in front of plaintiffs' eyes"); *Evan v. Rudy-Luther Toyota, Inc.*, 39 F. Supp. 2d 1177, 1184 (D. Minn. 1999); *Van Pier v. Long Island Sav. Bank*, 20 F. Supp.2d 535, 539 (S.D.N.Y. 1998); *Campell v. Chandler Associates, Inc.*, 1997 WL 151889, *2 (N.D.N.Y. 1997); *Thomas*, 2002 WL 99737 *2. We do not have diversity jurisdiction over the remaining state law claim in Count I because the amount in controversy requirement is not met. We therefore dismiss Counts I and II.

## CONCLUSION

For the foregoing reasons, we grant Defendant's motion to dismiss Counts I and II.

_____
Charles P. Kocoras
Chief Judge
United States District Court

Dated: September 25, 2002